*129 JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusion that the stricken portions of § 45-2-203, MCA (1993), violated Egelhoff’s right to due process, and therefore, were unconstitutional. However, I do not agree with all that is said in the majority opinion.
I specifically disagree that a principle of constitutional law can be made applicable to some citizens and not others.
In my view, the role of this Court is to interpret the Constitution and apply it to the parties before it. Whether the parties come before this Court by direct appeal, or by statutorily authorized collateral review, is irrelevant. The protections afforded by the Constitution apply to everyone. It makes no sense to have different interpretations based on the procedure by which an unconstitutionally treated person arrives in our Court.
The majority relies on Teague v. Lane (1989), 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d. 334, for the principle that “new” rules of constitutional law must be applied to all cases still subject to review, but only under limited circumstances to cases which are collaterally reviewed. Teague, and the U.S. Supreme Court’s earlier decision in Griffith v. Kentucky (1987), 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649, are based largely on the earlier dissent of Mr. Justice Harlan in Mackey v. United States (1971), 401 U.S. 667, 91 S. Ct. 1160, 28 L. Ed. 2d. 404. In Mackey, the majority of the U.S. Supreme Court refused to apply two of its decisions interpreting the Fifth Amendment right against compulsory self-incrimination to other cases which were pending on direct appeal at the time those cases were decided. In dissent, Justice Harlan pointed out that selectively applying the Constitution to people who are similarly situated based merely on the circumstances or timing of their appearance in court is the antithesis of the judiciary’s responsibility. Since his observations are equally applicable to the distinction made between those defendants who appear by direct appeal and those who appear by collateral review, they are worth repeating.
We announce new constitutional rules, then, only as a correlative of our dual duty to decide those cases over which we have jurisdiction and to apply the Federal Constitution as one source of the matrix of governing legal rules. We cannot release criminals from jail merely because we think one case is a particularly appropriate one in which to apply what reads like a general rule *130 of law or in order to avoid making new legal norms through promulgation of dicta. This serious interference with the corrective process is justified only be necessity, as part of our task of applying the Constitution to cases before us. Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitute an indefensible departure from this model of judicial review.
... In truth, the Court’s assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review, is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation. We apply and definitively interpret the Constitution, under this view of our role, not because we are bound to, but only because we occasionally deem it appropriate, useful, or wise. That sort of choice may permissibly be made by a legislature or a council of revision, but not by a court of law.
... I continue to believe that a proper perception of our duties as a court of law, charged with applying the Constitution to resolve every legal dispute within our jurisdiction on direct review, mandates that we apply the law as it is at the time, not as it once was. Inquiry into the nature, purposes, and scope of a particular constitutional rule is essential to the task of deciding whether that rule should be made the law of the land. That inquiry is, however, quite simply irrelevant in deciding, once a rule has been adopted as part of our legal fabric, which cases then pending in this Court should be governed by it.
Mackey, 401 U.S. at 678-81, 91 S.Ct. at 1172-74, 28 L. Ed. 2d at 412-14 (Harlan, J., dissenting).
While Justice Harlan was unwilling to apply the same logic to those cases reviewed by a petition for a federal writ of habeas corpus, I can see no reason for making such a distinction under state law. The bases by which criminal convictions can be collaterally reviewed in Montana are very limited. See § 46-22-101, MCA (habeas corpus), and § 46-21-105(2), MCA (limitations on post-conviction relief). Furthermore, no criminal conviction can be reversed under Montana law, even if constitutional rights were violated, where the constitutional *131 infraction did not contribute to the defendant’s conviction. Section 46-20-104, MCA.
The effect of the majority’s limitation on the application of their decision, then, is to hold that even in those cases where people have been convicted and jailed in violation of their right to due process, and even where that violation is raised properly by collateral review, we will not consider the constitutional infraction simply because it is brought to our attention by collateral review, rather than direct appeal.
This dichotomy is irrational and offends the very traditions of fairness and due process which we, as a judicial body, are charged to enforce.
For these reasons, while I concur with the result arrived at in this case, I dissent from that part of the majority opinion which would selectively apply the constitution of this State, or of the United States, based upon the procedure by which offensive governmental conduct is brought to our attention.
JUSTICE HUNT joins in the foregoing concurring and dissenting opinion.